UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA BROOMES, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>FULLBEAUTY BRANDS OPERATIONS, LLC,<br><br>    Defendant. | Case No. 24-cv-03558-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 68 |

      Defendant FullBeauty Brands Operations, LLC seeks to compel arbitration 14 months after Plaintiff Amanda Broomes filed this putative class action in June 2024. In those months, FullBeauty received a ruling on its motion to dismiss—which challenged Broomes's claims on the merits—and began participating in discovery. It may not now seek to compel Broomes into arbitration after trying its luck before this Court. However, the complaint was recently amended to add five named Plaintiffs ("New Plaintiffs"), and the New Plaintiffs' claims expand the scope of products at issue in the litigation. FullBeauty is not estopped from seeking to arbitrate the claims of the New Plaintiffs, because it has not waived its right to arbitrate as to the class as a whole. But, for the reasons discussed below, FullBeauty has only shown that it formed an agreement to arbitrate with one of the New Plaintiffs, Christina Thiele-Yancy. Therefore, FullBeauty's Motion to Compel Arbitration and Stay the Action (Dkt. No. 68) is **GRANTED** in part and **DENIED** in part. This order assumes the reader is familiar with the facts of the case, the applicable legal standards, and the arguments made by the parties.

*Waiver*.[1]  FullBeauty has waived its right to arbitrate Broomes's claims because it knew "of an existing right to compel arbitration" and took "intentional acts inconsistent with that existing right."  *See Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023); *In re Google Assistant Priv. Litig.*, 19-cv-04286-BLF, 2024 WL 251407, at *4 (N.D. Cal. Jan. 23, 2024) ("knowledge of a contractual right to arbitrate is imputed to [defendant] as the contract's drafter").  As to knowledge, FullBeauty argues that only after taking discovery did it learn that Broomes had agreed to arbitrate her claims.  But FullBeauty also argues that, since at least 2023, *every* individual who has made a purchase on its websites has been required to agree to its arbitration provision.  (Dkt. No. 68 at 7–8;[2] Dkt. No. 69 ¶¶ 11–12.)  Therefore, FullBeauty was on notice of its right to seek to compel arbitration of claims brought by Broomes, who allegedly made a purchase in 2024, even if it did not know the specifics of Broomes's account information at the outset of the case.[3]  FullBeauty also took acts inconsistent with an intention to compel arbitration by filing a motion to dismiss on the merits of Broomes's claims.  *See Alvarez v. Sheraton Operating Corp.*, No. 22-55749, 2023 WL 2491279, at *1 (9th Cir. Mar. 14, 2023); *see also Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 477 (9th Cir. 2023) ("we will not endorse [] attempt[s] to play a game of heads I win, tails you lose by belatedly seeking refuge in arbitration" (quotation omitted)).  FullBeauty argues that the filing of the Third Amended Complaint expanded the scope of the litigation and re-opened its opportunity to compel arbitration.  But it does not suggest that Broomes expanded the scope of, or materially changed, her own claims.  Therefore, the filing of the Third Amended Complaint does not affect the

---

[1] FullBeauty does not argue that the question of whether there has been waiver through litigation conduct has been delegated to the arbitrator, and the Ninth Circuit has instructed that the issue of waiver is presumptively for the Court to decide.  *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120–21 (9th Cir. 2008); *Martin v. Yasuda*, 829 F.3d 1118, 1123–24 (9th Cir. 2016).

[2] All citations to page numbers refer to ECF pagination.

[3] FullBeauty argues that Broomes's declaration in opposition to its motion to compel arbitration now states that she made purchases via a mobile app rather than the website. (Dkt. No. 80 at 18–19.)  But FullBeauty also states that all individuals who made mobile application purchases in February of 2024 were required to agree to its arbitration provision, which leads to the same result.  (Dkt. No. 69 ¶ 21.)

waiver analysis as to Broomes. FullBeauty has waived any right compel Broomes to arbitrate the claims she asserts in this action.

However, FullBeauty did not waive its right to arbitrate on a class-wide basis, or as to any of the New Plaintiffs. A court may find class-wide waiver where a defendant "litigate[d] the merits . . . on a class-wide basis." *Roman v. Jan-Pro Franchising Int'l, Inc.*, 342 F.R.D. 274, 291 (N.D. Cal. 2022); *Hill*, 59 F.4th at 473. For example, in *Roman*, defendant filed a "motion for summary judgment seek[ing] a *system-wide* victory on the classification issue. For two and one-half pages, defendant argue[d] its entire franchise system complies with state and federal franchise laws and, therefore, that all unit franchisees—not just the named plaintiffs"—claims failed. 342 F.R.D. at 291–92 (emphasis in original). In *Hill*, defendants sought discovery from putative class members and then moved for summary judgment on a theory that would have foreclosed the bulk of their claims. 59 F.4th at 473–76. In both cases, defendants' actions indicated the intent to litigate class claims. In this case, by contrast, Plaintiffs have not pointed to any arguments in FullBeauty's motion to dismiss that would amount to a class-wide challenge.

With respect to the New Plaintiffs in particular, because they were only added to this litigation a month before FullBeauty filed its motion to compel arbitration, and FullBeauty has not sought to litigate these claims on the merits in this action, there has been no waiver as to them. Notably, both sides' briefing includes an extensive overview of related litigation in state and federal court involving subsets of the named Plaintiffs. But FullBeauty's conduct in other litigation has little bearing on whether or not there has been waiver of the right to arbitrate in this case. None of this conduct indicates that FullBeauty has waived its right to arbitrate the New Plaintiffs' or class-wide claims brought in this lawsuit. Therefore, the Court considers whether FullBeauty formed an agreement to arbitrate with any of the New Plaintiffs.

***Formation of an Agreement to Arbitrate***. Whether an agreement to arbitrate was formed is a non-delegable issue that must be decided by the courts, not by the arbitrator. *See Ahlstrom v. DHI Mortg. Co., Ltd.*, L.P., 21 F. 4th 631, 635 (9th Cir. 2021) (holding that "parties cannot delegate issues of formation to the arbitrator"). "Unless the website

3

operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)).  It is undisputed that each of the New Plaintiffs engaged in either an account creation or a purchase on FullBeauty's websites.  Uht, Fitch, and Hillis did so when they created a FullBeauty account and made purchases on FullBeauty websites.  Robinson did so, at minimum, by making a purchase on a FullBeauty website.  Thiele-Yancy did so by creating an Eloquii account prior to its acquisition by FullBeauty.[4]  Therefore, the question is whether the websites at issues provided reasonably conspicuous notice, so that when the New Plaintiffs clicked to make their account or purchase, they unambiguously manifested assent to FullBeauty's terms.

FullBeauty has not carried its burden of showing that its Create Account and Purchase pages provided reasonably conspicuous notice of the FullBeauty Terms.  FullBeauty has introduced a sworn declaration stating that in order to create an account, Uht, Fitch, and Hillis would have encountered substantially identical version of one of the following two notices:



(Dkt. No. 69 ¶¶ 7–10; *see also* Dkt. Nos. 78-19 to 78-20.)

---

[4] Plaintiffs dispute whether Thiele-Yancy was required to view the Eloquii Create Account page to make her account.  (Dkt. No. 77 at 22.)  However, FullBeauty has submitted a sworn declaration stating that Thiele-Yancy created an Eloquii account on May 26, 2020 (Dkt. No. 69 ¶ 22), and submitted a copy of the account creation page from April 14, 2020 (Dkt. No. 70-3).  Absent contrary evidence from Plaintiffs, this is sufficient to satisfy FullBeauty's burden under the preponderance of the evidence standard.

To make their purchases, Uht, Fitch, Hillis, and Robinson would have encountered the following notice:

By placing your order, you agree to our Terms and Conditions, Returns Policy and Privacy Policy.

**PLACE ORDER**

(Dkt. No. 69 ¶ 12.)

This text does not constitute reasonably conspicuous notice of the terms the New Plaintiffs were agreeing to when they clicked the operative button. The placement of the hyperlink is not the problem. The clearly legible text is located immediately around the "Create Account" and "Place Order" buttons, and informs the user that clicking the button constitutes accepting or agreeing to certain terms. However, nothing about the notice alerts a reasonable website user that the words "Terms and Conditions" is a hyperlink to a separate document. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023) (considering not only the placement and legibility of the notice, but also the "crucial[]" fact that the hyperlinks were "conspicuously distinguished from the surrounding text"). The entire text is in the same grey font, there are no underlines, capitalizations, size, or font differences to indicate that certain portions of the text would lead the user to an agreement. Although the Ninth Circuit instructs that there are no bright line tests for what makes a notice of terms sufficiently conspicuous, *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1156–57 (9th Cir. 2025), failure to indicate in any way that a hyperlink is present is clearly insufficient to provide adequate notice. Even where such text is in close proximity to an operative button, users "cannot be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to ferret out hyperlinks." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 854 (9th Cir. 2022) (quotation omitted). Likewise, the fact that the FullBeauty Terms are also linked at the very bottom of the sign-up page, far from the operative button and again without denoting in any way that they are hyperlinked, does not provide sufficient notice. (Dkt. Nos. 78-19 to 78-20.) In

5

sum, FullBeauty has failed to show that it formed an agreement to arbitrate with Plaintiffs Uht, Fitch, Hillis, and Robinson with respect to the FullBeauty Terms.

The pre-acquisition Eloquii Create Account page, however, did provide reasonably conspicuous notice of the Eloquii Terms.  Directly above the "Create Account" button, the page states "By clicking Create Account, you acknowledge that you have read and agreed to the privacy policy and terms and conditions."  (Dkt. Nos. 70-3, 71, 78-21.)[5]  The webpage is relatively uncluttered, the words "terms and conditions" is underlined and is in a different color from the remaining text in the sentence.  While other text on the page is larger, the notice is clear and easy to read.  Finally, the creation of an account is generally the "type of transaction [that] contemplates entering into a continuing, forward-looking relationship' governed by terms and conditions."  *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1017, 1019 (9th Cir. 2024) (explaining that the context of the transaction is part of the conspicuousness analysis) (quotations omitted).  Therefore, FullBeauty has shown that Eloquii formed an agreement to arbitrate with Thiele-Yancy, the only Plaintiff besides Broomes who created an Eloquii account pre-acquisition.  (*See* Dkt. No. 80 at 8.)

***Delegation***.  Under controlling Ninth Circuit law, the Eloquii Terms' incorporation of the JAMS rules (Dkt. No. 70-2 § 17)[6] "constitutes clear and unmistakable evidence that contracting parties agreed" to delegate the threshold question of arbitrability to the arbitrator.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding that incorporating of AAA rules satisfied the requirement); *Cooper v. Adobe Sys. Inc.*, 18-cv-06742-BLF, 2019 WL 5102609, at *6 (N.D. Cal. Oct. 11, 2019) (explaining that the JAMS rules likewise delegated the question of arbitrability to the arbitrator, and applying *Brennan*).

---

[5] The Court's conclusion is the same regardless of whether it considers FullBeauty or Plaintiffs' exhibits.

[6] The provision states: "The arbitration will be administered by Judicial Arbitration Mediation Services, Inc. ('JAMS') pursuant to the JAMS Streamlined Arbitration Rules & Procedures effective July 1, 2014 (the 'JAMS Rules') and as modified by this agreement to arbitrate. . . . available on the JAMS website [URL]."

Plaintiffs argue that *Brennan* does not control because it involved "sophisticated" parties and not consumer contracts. It is true that *Brennan* did not squarely decide the issue. *See* 796 F.3d at 1130–1 (limiting its holding to the facts of the case—which involved sophisticated parties—but stating that "our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts"). However, the majority of district courts have since applied *Brennan* in the consumer contract context, especially where plaintiffs have not introduced any evidence of their lack of sophistication. *See In re BAM Trading Servs. Inc. Secs. Litig.*, 733 F. Supp. 3d 854, 862–64 (N.D. Cal. 2024) (noting that the alternative would result in "impractical line-drawing"); *see also Rendon v. T-Mobile USA, Inc.*, 747 F. Supp. 3d 1314, 1319 (C.D. Cal. 2024) (collecting cases), *reconsideration denied*, No. 24-cv-01666, 2024 WL 5256491 (C.D. Cal. Nov. 4, 2024). This Court agrees with the majority view, and will apply *Brennan* here.

Plaintiffs also argue that because the "Eloquii Terms [] contain both an arbitration provision (Section 17) and Ohio court forum selection provision (Section 20)" there is no clear and unmistakable evidence of delegation. (Dkt. No. 77 at 24.) The relevant language in the two sections reads as follows:

> <u>Disputes & Arbitration; Applicable Law</u>. **PLEASE READ THIS SECTION CAREFULLY**. IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT. Using or accessing the Sites constitutes your acceptance of this Arbitration provision. Please read it carefully as it provides that you and ELOQUII will waive any right to file a lawsuit in court or participate in a class action for matters within the terms of the Arbitration provision.
>
> EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND ELOQUII, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY, AND YOU AGREE THAT ELOQUII AND YOU ARE EACH WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY JURY. YOU AGREE THAT ANY ARBITRATION WILL TAKE PLACE ON AN INDIVIDUAL

> BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED AND YOU ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION. . . .

(Dkt. No. 70-2 § 17.)[7]

> <u>Miscellaneous</u>. In the event that any portion of these Terms of Use is held to be invalid or unenforceable, then such portion shall be construed in accordance with the applicable law as nearly as possible to reflect the original intentions of the parties, and the remainder of these Terms of Use shall remain in full force and effect. . . .
>
> Except for proceedings commenced by us to protect our intellectual property or confidential information which may be brought in any court of competent jurisdiction, the parties mutually agree that any and all disputes arising hereunder shall be resolved exclusively by state or federal courts located in the State of Ohio.

(*Id.* § 20.)

The Ninth Circuit confronted substantially the same issue in *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (2016). There, two contracts contained delegation clauses that, on their own, were clear and unmistakable, but also contained a venue clause stating that "any disputes, actions, claims, or causes of action arising out of or in connection with this Agreement . . . shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco." *Id.* at 1209. The Ninth Circuit held that there was no tension between this clause and the delegation clause, because "the venue provision [] was intended . . . to identify the venue for any other claims that were not covered by the arbitration agreement." *Id.* The same is true here. Section 20 contemplates circumstances where other provisions of the agreement might be invalid or unenforceable. It designates Ohio state and federal courts as the venue for such claims. Therefore, the venue provision, like the one in *Mohamed*, appears intended to fill in the gaps should some or all of the arbitration provision not apply. Section 20 does not render the delegation provision ambiguous.

Because the Eloquii Terms contain clear and unmistakable evidence of delegation, the threshold question of arbitrability is delegated to the arbiter.

---

[7] All emphases and capitalizations in original.

*Conclusion*.  FullBeauty's motion to compel arbitration and stay the action is **GRANTED** as to Thiele-Yancy's claims, and is **DENIED** in all other respects.  The case is **STAYED** as to Thiele-Yancy's claims only, pending the results of arbitration. The parties shall file a joint status report every 180 days to update the Court on the arbitration proceedings, starting from the date of this Order, and shall file a status report within 14 days of the completion of arbitration proceedings.

**IT IS SO ORDERED.**

Dated: December 11, 2025

RITA F. LIN
United States District Judge